IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff.

v.                                                                        No. 24-CR-01284-DHU

ZACHARY BABITZ,

    Defendant.

## MOTION FOR IMMEDIATE STAY OF PROCEEDINGS

COMES NOW, Zachary Babitz by and through his attorneys, Learned Counsel Laura Udall and Assistant Federal Public Defenders Martín Juárez and Angelica Hall, and moves this Court to immediately stay the capital prosecution until such time as the United States Government fully funds a fiscal budget.

Due to the lapse in funding, Learned Counsel and critical defense experts are not being compensated or reimbursed for expenses and must, therefore, severely limit or pause their representation of Zachary Babitz, leaving him stripped of rights guaranteed to him by the United States Constitution. Because of the United States Government's inability to fund his defense, Defendant Zachary Babitz respectfully moves this Court, pursuant to the Sixth and Eighth Amendments to the United States Constitution, *Gideon v. Wainwright*, 372 U.S. 335 (1963), *Ake v. Oklahoma*, 470 U.S. 68 (1985), and the Criminal Justice Act (CJA), 18 U.S.C. § 3006A and 18 U.S.C. § 3005, for an *immediate stay* in this death penalty prosecution. This Motion is supported by the following Memorandum of Points and Authorities.

1

I.  **RELEVANT BACKGROUND**

On September 10, 2024, a federal grand jury returned a 13-count indictment, charging with Mr. Babitz with interference with Commerce by Robbery; using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of such crime; bank robbery, using, carrying and brandishing a firearm during and in relation to a crime of violence, and possessing and brandishing a firearm in furtherance of such crime, carjacking resulting in death, using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of such crime; discharging said firearm; and causing death through use and possession of a firearm, carjacking, interference with commerce by robbery, aiding and abetting, using, carrying, and brandishing a firearm during and in relation to a crime of violence, and possessing and brandishing a firearm in furtherance of such crime, aiding and abetting, carjacking, aiding and abetting, felon in possession of a firearm. In violation of 18 U.S.C. § 1951, U.S.C. § 924(c)(l)(A)(i), U.S.C. § 2113(a), 18 U.S.C. § 924(c)(l)(A)(ii), U.S.C. § 2119(3), U.S.C. §§ 924(c)(l)(A)(iii) and (j)(1), U.S.C. § 2119(1) and U.S.C. § 2, U.S.C. § 922(g)(l) and 924. Doc. 19 ("Indictment"). The Indictment includes a notice of special findings under 18 U.S.C. § 3591 and 3592, in relation to Counts Six and Seven, carjacking resulting in death. The notice includes that the victim was vulnerable due to his age, pecuniary gain, intention killing and the defendants' prior criminal history. *See* Doc. 19. Given that the Indictment carried a potential of death, the Court appointed Learned Counsel on September 30, 2024. Doc 41.

The case was set for a meeting with Main Justice on April 14, 2025, to give the defense the opportunity to present mitigation evidence and to try to resolve the case. The meeting was continued at the request of the defense and rescheduled to July 14, 2025. On June 23, 2025, the Government canceled the meeting and has not rescheduled.

The Court granted five unopposed defense motions to extend time to submit a scheduling order. Doc. 53, 54, 55, 56, 62, 63, 67, 70. Each time Mr. Babitz and the Government gave the

2

Court notice that all parties were awaiting a decision by the Attorney General. Currently, a scheduling conference is set for November 19, 2025, at 2 p.m. Doc. 90.

On July 3, 2025, the Federal Government ran out of funds to compensate CJA attorneys and experts as the fiscal funding under the Criminal Justice Act for 2025 had been exhausted. This lack of funding directly impacts Mr. Babitz as no monies have been disbursed to the CJA members of Mr. Babitz's defense team since June 30, 2025. Various CJA members of Mr. Babitz's team have not been paid since April 2025 for work completed. Mr. Babitz's team was notified that payments for work completed would be made after the passage of the new fiscal budget.

The new fiscal year was to begin on October 1, 2025. In reliance on the fact that the fiscal year would begin as planned, Learned Counsel, mitigation expert, and expert paralegal continued to work on Mr. Babitz's case as well as carry their carry costs and travel-related expenses associated with effective representation of Mr. Babitz. Mr. Babitz was, until recently, detained at the Dona Ana Detention Center located in Las Cruces, New Mexico, more than three hours away from the nearest team member. Travel to meet with Mr. Babitz was at a minimum a seven-hour round-trip, but as much as eight hours for Learned Counsel.

During a status conference on August 21, 2025, Learned Counsel informed this Court that the CJA-funded members of the defense team could not continue such work without compensation and reimbursement of expenses and would have to be working on a limited basis due to the lack of funding. This Court affirmed that it was aware that vouchers could not be paid until a new budget was approved and that CJA-funded members of the defense team's – ongoing work - would be on a limited basis. Of course, all parties believed that payments delayed for many months would resume on October 1, 2025, with the passage of a new budget.

On October 1, 2025, the federal government shut down, and to date, the Government has not fully funded a fiscal budget as of the filing of the instant Motion. CJA members are a critical part of

the team and can no longer continue to work for free or pay expenses out of their own pockets. Now, because of the Government shutdown and exhaustion of Defender Services funds as of October 17, 2025, the members of Mr. Babitz's defense team who work for the Federal Defender's Office are not being paid for their work as well. With no funding for Mr. Babitz's defense, no member of his team will be paid for their work – not attorneys, learned counsel, investigators, mitigation specialist, paralegals, or experts.

On October 22, 2025, the United States filed a "Notice of Intent to Seek the Death Penalty Pursuant to Title 18 United States Code §3593 (a)." Doc 92. The United States notified Defendant that, in the event of a conviction of the offenses charged in Counts Six and Seven of the *Indictment*, a sentence of death is authorized by Congress under Chapter 228 (§§ 3591 through 3598) of Title 18 United States Code, and the government will seek a sentence of death.

## II.     LEGAL ARGUMENT

### A. THE FIFTH AND SIXTH AMENDMENT'S GUARANTEE TO A MEANINGFUL DEFENSE

The Fifth Amendment guarantees that "No person shall be…deprived of life, liberty or property without due process of law[.]" The Sixth Amendment further guarantees that: "In all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The Supreme Court has held this to mean "that …. counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived." *Gideon v. Wainwright*, 372 U.S. 335, 339–40 (1963).  In *Gideon,* the Court explained:

> The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him.

*Id.* at 344. The Supreme Court has held that criminal defendants are not only guaranteed the right to counsel but are entitled to effective representation and given access to the tools necessary for a meaningful defense. See *Ake v Oklahoma,* 470 U.S. 68, 76 (1985) (listing cases). As the Supreme Court unequivocally explained in *Ake:*

> We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, it has often reaffirmed that fundamental fairness entitles indigent defendants to "an adequate opportunity to present their claims fairly within the adversary system".. To implement this principle, we have focused on identifying the "basic tools of an adequate defense or appeal," and we have required that such tools be provided to those defendants who cannot afford to pay for them.

Subsequently, in *Medina v. California*, 505 U.S. 437, 444-45 (1992) the Supreme Court clarified *Ake* and incorporated its holding:

> The holding in *Ake* can be understood as an expansion of earlier due process cases holding that an indigent defendant is entitled to the minimum assistance necessary to assure him a fair opportunity to present his defense and to participate meaningfully in the judicial proceeding.

Because the minimum assistance necessary to assure Mr. Babitz a fair opportunity to present his defense and to meaningfully participate in his defense cannot be provided now or in the foreseeable future until funds are available to pay essential experts the case must be stayed in its entirety.

    **B. ABA Guidelines and Mitigation in this Capital Case**

The bedrock principle of capital jurisprudence is that death is different. This view of capital cases informs and guides the entire body of capital jurisprudence and capital-case litigation. Simply stated, death penalty cases are not the same as other cases and cannot be treated the same as other cases. *See Harris v. Alabama,* 513 U.S. 504, 516 n.1 (1995) (Stevens, J., dissenting) (citing seven separate decisions, noting, "Our opinions have repeatedly emphasized that death is fundamentally different kind of penalty from any other that society may impose"); *see also Harmelin v. Michigan,* 501 U.S. 957, 994 (1991) (because "death is different", the Supreme Court has "imposed protections that the Constitution nowhere else provides"); *Sampson v. United States,*

832 F.3d 37, 43 (1st Cir. 2016) (noting that "an already significant legal question is even more so in the context of a capital case, because 'death is [] different.'").

According to the Supreme Court, the American Bar Associations Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, for Capital Defense "are guides to determining what is reasonable, but they are only guides." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The ABA Standards are quite explicit in this area. Guideline 10.4 requires defense counsel to assemble a team that includes "at least one member qualified by training and experience to screen individuals for the presence of mental or psychological disorders or impairment…." (Internal Punctuation Omitted). Currently, Mr. Babitz's defense team does not have the ability to pay such an expert for any services. The inability to screen Mr. Babitz at any given time for potential mental illness that may not have been previously diagnosed imperils Mr. Babitz's right to present a defense during the guilt stage, under Federal Rule of Criminal Procedure 12.2, and during the sentencing phase. 18 U.S.C. § 3592 (a)(1)-(2). Because there is no way to screen Mr. Babitz for any mental or psychological disorders without the ability to pay a consulting expert, the case must be stayed in its entirety.

ABA Guideline 10.4 also requires "at least one mitigation specialist and one fact investigator[.]". These team members are essential for both the guilt and mitigation stages of trial. These members of the defense team are all currently unpaid. Because death is different, "so too are the lengths to which defense counsel must go in investigating a capital case." *Doe v. Ayers*, 782 F.3d 425, 435 (9th Cir. 2015) (citations omitted). Counsel must exhaustively explore every aspect of the "defendant's character ... and any of the circumstances of the offense." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). *See also Wiggins*, 529 U.S. at 396 (reversing based on counsel's failure to "fulfill their obligation to conduct a thorough investigation of the defendant's background.").

In terms of mitigation, to meet these fundamental capital defense practice standards, the ABA Guidelines require comprehensive records collection and multiple in-person meetings with clients and witnesses in both fact and mitigation investigation. *See* American Bar Ass'n, Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, 31 HOFSTRA L. REV. 913 (2003) ("Guidelines") Guideline 10.7; American Bar Ass'n, Supplementary Guidelines for the Mitigation Function of Defense Teams in Capital Cases, 36 HOFSTRA L. R EV. 677 (2008) ("Supplementary Guidelines"), Guideline 10.11. Specifically, Supplementary Guideline 10.11 addresses the "requisite mitigation functions of the defense team," which include:

- undertaking an "ongoing, exhaustive and independent investigation of every aspect of the client's character, history, record…or other factors which may provide a basis for a sentence less than death" 10.11(B);

- conducting "in-person, face-to-face, one-on-one interviews" with biopsychosocial history witnesses or any witness "who would support a sentence less than death,"

- "[m]ultiple interviews [which] will be necessary to establish trust, elicit sensitive information and conduct a thorough and reliable life-history investigation" 10.11(C);

- uncovering comprehensive documentary evidence of the client's biopsychosocial history for counsel's use, 10.11(D);

- aiding counsel with the selection and preparation of testifying witnesses, lay and expert, 10.11(E);

- gathering documentary support for lay and expert witness testimony, including biopsychosocial history records, 10.11(F), and aiding counsel in gathering and preparing demonstrative evidence that "humanize the client or portray him positively" 10.11(G). "The collection of corroborating information from multiple sources—a time-consuming task—is important wherever possible to ensure the reliability and thus the persuasiveness of the evidence." Guideline 10.7 cmt.6.

Many topics that must be explored in a mitigation investigation are highly sensitive. A competent mitigation investigation will often reveal shameful family secrets like mental illness, substance use, domestic abuse, sexual abuse, and trauma. A mitigation investigation can be a prolonged invasion into the privacy of a client and those close to him. To obtain reliable mitigating

evidence, the mitigation specialist must treat potential witnesses professionally, recognize and respect the barriers at play, and commit the time it takes to gain their trust and develop rapport. Rapport is developed through multiple in-person meetings with witnesses. A single meeting is rarely sufficient. Rather, "multiple interviews will be necessary to establish trust, elicit sensitive information, and conduct a thorough and reliable life-history investigation." Supplementary Guidelines 10.11(C).

      The mitigation investigation for Mr. Babitz's case has already been compromised by the ongoing CJA funding crisis. At present, and for the foreseeable future, it is stalled because the defense continues to be unable to pay mitigation specialists. A mitigation investigation in a death penalty case is always an enormous operation. The investigation into this case is especially complex and time-consuming. The outstanding mitigation work in this case is daunting; it will require a great deal of time and energy from specialists trained in the field. With no funding for this essential part of Mr. Babitz's defense, the team cannot continue to meet with critical mitigation witnesses, pursue and digest records, or engage in numerous other critical tasks. Mr. Babitz's mitigation investigation is unconstitutionally prejudiced because of this lack of resources.

      As a result, counsel have grave concerns about a denial of due process of law, in violation of the Fifth Amendment, by the United States seeking to deprive Mr. Babitz of his very life where he has been denied any opportunity to pay the mitigation specialists, the defense experts, the investigators, and, even, his attorneys for the foreseeable future. All those individuals represent the minimum assistance necessary to assure Mr. Babitz a fair opportunity to present his defense and to participate meaningfully in the judicial proceeding where his life is at stake as stated in *Medina*. The same grave concerns relate to counsels' ability to effectively represent Mr. Babitz as required by the Sixth Amendment and to uncover the necessary mitigating information for the jury to make the individualized determination with the "heightened reliability" required by the Eighth Amendment.

*See Ford v. Wainwright*, 477 U.S. 399, 414 (1986) (Court's consideration of capital cases has been characterized by "heightened concern for fairness and accuracy"); *Lockett v. Ohio*, 438 U.S. 586, 603-05 (1978) (requiring consideration of all relevant mitigating evidence to avoid "the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty"). The Supreme Court reaffirmed the duty to investigate mitigation evidence thoroughly in *Andrus v. Texas*, 590 U.S. \_\_\_, 140 S. Ct. 1875, 1882-87 (2020) (per curiam)

### C. MR. BABITZ'S CAPITAL DEFENSE CANNOT OPERATE WITHOUT LEARNED COUNSEL AND/OR MITIGATION EXPERTS.

A person indicted in federal court for any death-eligible offense is entitled to appointment of two attorneys, at least one of whom must be "learned in the law applicable to capital cases." 18 U.S.C. § 3005. Judicial Conference policy is that "[o]rdinarily, 'learned counsel' should have distinguished prior experience in the trial, appeal, or post-conviction review of federal death penalty cases, or distinguished prior experience in state death penalty trials, appeals, or post-conviction review that, in combination with co-counsel, will assure high quality representation." Recommendation 1(b), Subcommittee on Federal Death Penalty Cases, Committee on Defender Services Judicial Conference of the United States, Federal Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense (approved September 15, 1998). More than two attorneys can be appointed to represent a defendant in a capital case. 18 U.S.C. § 3599(a). In addition to the "learned counsel" requirement of §3005, minimum experience standards for attorneys appointed in capital cases are set forth in 18 U.S.C. § 3599(a)-(d). Procedures for appointment of counsel and attorney qualification requirements are further detailed in [Guide to Judiciary Policy, Volume 7A, § 620 (Appointment of Counsel in Capital Cases)](#).

Highly skilled and experienced counsel is critical at every stage of a federal death penalty proceeding, and it is important from the outset of a case that death-qualified counsel be appointed to provide representation to defendants charged with a capital crime. Judicial Conference policy makes

clear that "[q]ualified counsel must be appointed in capital cases at the earliest possible opportunity." Guide to Judiciary Policy, Vol. 7A, Appx. 2A. This Court has followed that Judicial policy. Doc. 41.

While there are many ways the United States's funding crisis is directly and indirectly affecting Mr. Babitz's defense, one of them has been defense counsel's recent inability to retain and pay experts. Due to the lack of CJA funds and the fact that the Federal Defender Office has no money in its budget for additional experts, the defense team cannot move forward with retaining these experts. Almost all of the expert funding has gone through Learned Counsel's CJA budget. Without funding, the defense team also lacks the ability to pay the experts it has already hired for their work.

Learned counsel is a solo practitioner with staff to support. There is no large firm to front funding, nor is there funding for a line of credit from a bank at this juncture. The lack of payment in all CJA cases has caused counsel to deplete savings as work and costs continue to build. Mr. Babitz's mitigation specialist has had to turn away from her mitigation work for Mr. Babitz and has had to take State work to provide for living expenses.

The continuation of this prosecution is constitutionally intolerable if there is no funding for defense counsel and defense experts. Congress's failure to fund Mr. Babitz's defense amounts to a deprivation of his right to due process of law in contravention of the Fifth Amendment and his right to counsel, guaranteed by the Sixth Amendment, while the government seeks his death. The appropriate remedy is an immediate stay of the proceedings is required until funding for both CJA and Defender Services is adequately restored.

## CONCLUSION

In this case, the prejudice Mr. Babitz faces is immediate. The failure to fund CJA attorneys, federal defenders, experts, and other service providers creates a situation in which Mr. Babitz is left without the resources necessary to mount a meaningful defense in the death penalty prosecution against him. Defense counsel is expected to represent Mr. Babitz without compensation and without

the ability to conduct a thorough investigation or consult with adequately funded and necessary experts. These are not abstract grievances or inconveniences; these are violations of his Constitutional rights as a U.S. citizen.

Because of the CJA funding crisis and subsequent shutdown of the federal government, Mr. Babitz is actively being deprived of a meaningful defense in violation of the Sixth Amendment, *Gideon v. Wainwright* and its progeny, and the Criminal Justice Act. Accordingly, the Court should immediately stay all proceedings until funding for both the CJA and the federal defender's office is adequately restored.

Undersigned counsel contacted Assistant United States Attorney Maria Elena Stiteler who indicated that the United States opposes this Motion.

Respectfully Submitted,

**LAURA E. UDALL PLLC**
P.O. Box 40294
Tucson, Arizona 85717
Phone: (520)770-1414
Email: laura@udall.me

Laura E. Udall
*/s/Laura E. Udall*

**FEDERAL PUBLIC DEFENDER**
111 Lomas Blvd., NW, Suite 501
Albuquerque, NM 87102
Phone: (505) 346-2489
Email:  martin_juarez@fd.org
          angelica_hall@fd.org

Martin Juarez
*/s/Martin Juarez*

Angelica Hall
*/s/ Angelica Hall*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 30th day of October 2025, I electronically filed the foregoing **MOTION FOR IMMEDIATE STAY OF PROCEEDINGS [DOC. NO. 98]**, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this case.

<u>/s/ Laura E. Udall</u>

Laura Udall
Attorney for Zachary Babitz